# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| MONTANA MERCHANDISING, INC., d/b/a MONTANA MILLING, INC., HINEBAUCH GRAIN, INC., and OCC-O'CONNOR CROPS AND CATTLE, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVE'S KILLER BREAD, INC., GLENN DAHL, Individually and as Trustee of Glenn Dahl Family Trust, DAVID J. DAHL, Individually and as Trustee of the David Dahl Family Trust, SHOBI L. DAHL, Individually and as Trustee of the Shobi L. Dahl Family Trust, FLOWERS FOODS, INC., and GOODE PARTNERS, LLC,<br><br>Defendants. | CV 17-26-GF-BMM<br><br><br><br><br><br>**OPINION AND ORDER ON DEFENDANTS' MOTION TO TRANSFER VENUE** |

Defendants Dave's Killer Bread, Inc. ("DKB") and Flowers Foods, Inc. ("Flowers") move this Court to transfer this case to the District of Oregon. (Doc. 13 at 2.) DKB and Flowers filed an action against MMI in the District of Oregon ("the Oregon Case") ten days before Plaintiffs Montana Merchandising, Inc. ("MMI"), Hinebauch Grain, Inc. ("Hinebauch"), and OCC-O'Connor Crops and Cattle, Inc. ("OCC") filed this lawsuit. (Doc. 14 at 8.) In the Oregon Case, DKB

1

and Flowers allege breach of contract and seek a declaratory judgment based on the same business dispute that underlies this action. *Id.* at 10. DKB and Flowers argue that the Court should apply the first-to-file rule. DKB and Flowers move in the alternative to stay this case pending resolution of the Oregon Case. (Doc. 13 at 2.)

Defendants Glenn Dahl, individually and as Trustee of the Glenn Dahl Family Trust, David J. Dahl, individually and as Trustee of the David Dahl Family Trust, Shobi L. Dahl, individually and as Trustee of the Shobi Dahl Family Trust, and Goode Partners, LLC (collectively, "Dahl/Goode Defendants"), join DKB and Flowers's motion. (*See* Doc. 15.)

## I. BACKGROUND

DKB, an Oregon corporation, produces organic bread products at its main bakery facility in Milwaukie, Oregon. (Doc. 14 at 9.) DKB and MMI began negotiations for the contracts at issue in this case in September 2013. (Affidavit of Greg Thayer, Doc. 27 at 2.) DKB asked MMI to procure millions of pounds of organic wheat and to provide milling services. *Id.* Representatives of DKB, including Director of Organic Procurement, Ron Milio, and then-President, John Tucker, traveled to Great Falls, Montana on October 25, 2013, to meet with around 30 wheat growers and solicit them to provide wheat to DKB. *Id.*; *see also* Declaration of Ronald Milio, Doc. 14-3 at 3. Plaintiffs Hinebauch and OCC

2

attended that meeting. (Affidavit of Greg Thayer, Doc. 27 at 2.) Milio attended the Montana Organic Association conference in Kalispell, Montana in December 2013, where he spoke at the event. *Id.* Milio discussed DKB's growing need for Montana wheat. *Id.* Around the same time, MMI began working with milling equipment suppliers to build a new mill to serve DKB. *Id.*

DKB and MMI entered into two written contracts based on negotiations that took place in October and December 2013. *Id.* at 3. First, on January 5, 2014, DKB and MMI executed a contract whereby MMI agreed to procure, and DKB agreed to purchase, millions of pounds of organic wheat. *Id.* MMI separately entered into 94 agreements with Montana-based wheat growers on DKB's behalf. *Id.* Second, on January 17, 2014, DKB and MMI entered into a contract whereby MMI agreed to mill the majority of the procured wheat in Montana. *Id.*

Milio traveled to Montana twice in August and December 2014 where MMI asserts that Milio reaffirmed his promises to purchase millions of pounds of organic wheat. (Affidavit of Greg Thayer, Doc. 27 at 3.) MMI asserts that Milio represented that DKB would need increasing amounts of wheat and would need all of MMI's milling capacity. *Id.* Milio and other DKB representatives flew to Great Falls in June 2015 to film four farming operations and a Montana Organic Association farm tour to promote DKB's use of Montana organic wheat in its bread products. *Id.* at 4. MMI asserts that Milio again represented that DKB would

need Montana wheat well beyond the three-year term of the contracts. *Id.* Both contracts applied to the years 2014/2015, 2015/2016, and 2016/2017.

In September 2015, Flowers, a publicly traded Georgia corporation, acquired DKB. (Oregon Complaint, Doc. 14-2 at 3). DKB emerged from the purchase as a wholly-owned subsidiary of Flowers. *Id.* MMI asserts that shortly thereafter, DKB/Flowers refused to honor its commitments to MMI and the Montana growers. (Affidavit of Greg Thayer, Doc. 27 at 3.) DKB/Flowers claims that disagreements arose between the parties regarding information about, and the volume of, organic wheat DKB was bound to accept, the length of time for which DKB was bound to accept the wheat, and the shipping conditions regarding the wheat. (Doc. 14 at 10.)

Milio and Flowers's representative, Miles Dennis, flew to Great Falls to meet with MMI in November 2015. (Affidavit of Greg Thayer, Doc. 27 at 3.) In December 2015, Milio and Dennis attended the Montana Organic Association conference in Bozeman, where Dennis was the dinner speaker. *Id.* Greg Thayer, president and CEO of MMI, and MMI employee, Sam Schmidt, traveled to Oregon in February 2016 to meet with Milio. (Doc. 14 at 10; Affidavit of Greg Thayer, Doc. 27 at 4-5.) Milio, Dennis, and another Flowers employee, Craig Parr, met with MMI in Great Falls in May 2016. (Affidavit of Greg Thayer, Doc. 27 at 5.)

Thayer sent an email to Dennis and Parr on October 25, 2016, informing them that MMI would seek legal assistance in recovering damages for

DKB/Flowers' failure to perform under the contract if the parties could not reach an agreeable solution. (Affidavit of Alexander Blewett III, Doc. 26 at 2.) DKB/Flowers and MMI participated in a mediation in Great Falls on January 24, 2017. *Id.* The parties failed to reach a settlement. (Affidavit of Alexander Blewett III, Doc. 26 at 2; Affidavit of Greg Thayer, Doc. 27 at 5; Declaration of Annamarie A. Daley, Doc. 40-1 at 3.)

On February 10, 2017, counsel for DKB/Flowers traveled to Great Falls to review MMI's agreements with the Montana growers and to discuss a possible resolution to the dispute. (Affidavit of Alexander Blewett III, Doc. 26 at 2; Affidavit of Greg Thayer, Doc. 27 at 5; Declaration of Annamarie A. Daley, Doc. 40-1 at 3.) Counsel for MMI informed DKB/Flowers's counsel that MMI immediately would file suit against DKB/Flowers if it did not agree to pay for the organic wheat that it was refusing to take. (Affidavit of Alexander Blewett III, Doc. 26 at 2; Affidavit of Greg Thayer, Doc. 27 at 5.)

MMI asserts that DKB/Flowers's counsel never contended, before or during that meeting, that MMI had breached the agreements, and counsel for DKB/Flowers never threatened litigation. (Affidavit of Alexander Blewett III, Doc. 26 at 2-3; Affidavit of Greg Thayer, Doc. 27 at 5.) MMI alleges that DKB/Flowers's counsel advised that she would check again with her clients and would inform MMI if the matter could be resolved. (Affidavit of Alexander

5

Blewett III, Doc. 26 at 3; Affidavit of Greg Thayer, Doc. 27 at 5-6.) The next day, on Saturday, February 11, 2017, counsel for DKB/Flowers filed the Oregon Case. (*See* Oregon Complaint, Doc. 14-2.)

DKB/Flowers's counsel contends that she "never deceived" Plaintiffs. (Declaration of Annamarie A. Daley, Doc. 40-1 at 3.) She further asserts that she did not file the Oregon Case "surreptitiously." *Id.* She declares that she never stated that her clients would wait to file a law suit. *Id.*

## II.  LEGAL STANDARDS

### A. Transfer of Venue

A plaintiff may file a civil action in a judicial district: (1) "in which any defendant resides, if all defendants are residents of the state in which the district is located;" (2) "in which a substantial part of the events or omissions giving rise to the claim occurred;" or if neither applies, then (3) "in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.SC. § 1391(b).

A district court may transfer, in its discretion, a civil action to another district or division where venue would be appropriate for the convenience of the parties and witnesses, and in the interests of justice. 28 U.SC. § 1404(a)-(b). A district court should decide a motion to transfer venue based on an "individualized,

case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted).

The Court must weigh a number of factors before determining whether a motion to transfer venue under § 1404(a) would be appropriate. *Stewart,* 487 U.S. at 29 (1988) (citation omitted). Those factors can include: "(1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (citations omitted).

Under the first-to-file rule, a district court may "decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982) (citations omitted). The rule promotes judicial efficiency and reduces the risk of inconsistent decisions that may result from litigation of the similar claims between the similar parties in different federal courts. *24 Hour Fitness USA, Inc. v. Coe*, 2012 WL 2370394, at *1 (D. Mont. June 21, 2012). The

rule should not be construed, however, as "a rigid or inflexible rule to be mechanically applied." *Pacesetter,* 678 F.2d at 95.

Courts examine three factors when determining whether the first-to-file rule applies: the chronology of the two actions, the identity of the parties involved, and the similarity of the issues at stake. *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). The Ninth Circuit specifically has recognized three exceptions to the first-to-file rule: bad faith, anticipatory suit, and forum shopping. *Alltrade*, 946 F.2d at 627-28.

The Eighth Circuit has identified "red flags" to signal potentially compelling circumstances for not applying the first-to-file rule. *Boatmen's First Nat'l Bank of Casas City v. Kansas Pub. Employees Ret. System*, 57 F.3d 638, 641 (8th Cir. 1995). The first red flag exists if one party filed the first suit after the other party gave notice of its intention to sue. *Id.* The second red flag exists if the first action sought a declaratory judgment rather than damages or equitable relief. *Id.*

**B. Stay**

A party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). The Ninth Circuit has adopted four factors courts should consider in this analysis. *McCullough v. Minn. Lawyers Mut. Ins. Co.*, 2010

8

WL 441533, at *4 (D. Mont. Feb. 3, 2010) (citations omitted). A stay is favored where: (1) it would not be indefinite; (2) plaintiff seeks only money damages; (3) resolution of the issues in the other action would assist in resolving the stayed action; and (4) a stay would promote docket efficiency and fairness to the parties. *Id.*

### III. DISCUSSION

Defendants request that the Court transfer this case under the first-to-file rule to the District of Oregon where it may be consolidated with the previously filed Oregon Case. (Doc. 14 at 21.) Plaintiffs argue that the first-to-file rule does not apply in this case because the Defendants acted in bad faith by forum shopping and racing to the courthouse to file an anticipatory suit. (Doc. 25 at 6.)

#### A. Transfer of Venue

Defendants argue that the District of Oregon provides a proper venue, transfer would serve the interests of justice, and the District of Oregon proves more convenient for the parties and witnesses. 28 U.S.C. § 1404(a). Section 1404 permits "a district court to transfer, stay, or dismiss" the second-filed action to advance the interests of justice where there exists a similar and first-filed complaint docketed in another federal district court. *Alltrade*, 946 F.2d at 623; 28 U.S.C. § 1404(a). Defendants argue that "a substantial part of the events or omissions giving rise to the claim occurred" in Oregon. 28 U.S.C. § 1391(b)(2).

DKB negotiated the written agreements at issue in this litigation from its headquarters in Oregon and transacted with MMI under those written agreements from Oregon for multiple years. DKB argues that this litigation will impact its 250 employees in Oregon, many of whom may be witnesses in this case. The Court notes, however, that the events giving rise to the claims at issue occurred in Montana.

Representatives of DKB and Flowers traveled to Montana on multiple occasions to negotiate the contracts at issue and to meet with Montana farmers. The parties executed two contracts, drafted by MMI in Montana. Performance of the contracts would occur exclusively in Montana. The wheat was to be procured in Montana from 94 Montana farmers, some of whom may be witnesses in this case. The wheat was to be milled in Montana. Performance under the contracts would have concluded in Montana with MMI delivering the wheat to a common carrier for shipment. These factors weigh in favor of resolving the dispute in Montana. *Jones*, 211 F.3d at 498-99.

Defendants argue nevertheless that DKB and Flowers filed the Oregon Case 10 days before Plaintiffs filed this case and that the similarity of the parties and issues at stake support transfer. *Alltrade*, 946 F.2d at 25. Plaintiffs suggest that Defendants filed an anticipatory suit in Oregon in a bad faith in an attempt to forum shop. *Alltrade*, 946 F.2d at 627-28.

The Third Circuit in *E.E.O.C. v. University of Pa.,* 850 F.2d 969, 972 (3rd Cir. 1988), upheld a district court's decision to decline to dismiss an enforcement suit by the Equal Employment Opportunity Commission ("EEOC") in favor of a previously filed lawsuit by the university in the District of Columbia. The university's action challenged the constitutionality of a national policy authorizing a subpoena by the EEOC. The Third Circuit noted that when the university filed the first suit in "a more friendly forum," it knew that the EEOC's enforcement action in the Eastern District of Pennsylvania was "imminent." *E.E.O.C.*, 850 F.2d at 975. The court characterized the university's action as "unabashed forum shopping." *Id.*

The Fifth Circuit upheld a Texas district court's decision in *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir. 1983), to decline to exercise jurisdiction in favor of allowing a parallel suit to proceed. The district court determined that the plaintiff, an insurance company, had caused the defendant to delay filing suit in California by representing that it was considering the merits of the claim and allowing an extension of the one-year limitation period. *Mission*, 706 F.2d at 602. The Fifth Circuit determined that sufficient evidence existed to support the district court's conclusion that the plaintiff had filed its action in anticipation of the defendant filing suit. *Id.*

A district court in Arkansas, faced with similar facts to this case, declined to apply the first-to-file rule. *Beard v. Diamond*, 2010 WL 1644686, *2 (E.D. Ark. 2010). The court held that "compelling circumstances" prohibited the application of the rule. *Id.* The court agreed with the defendants that the plaintiff's filing constituted a "bad faith attempt at forum shopping, done during settlement negotiations in anticipation of litigation." *Id.* at *1 (citing *Boatmen's*, 57 F. 3d at 641.) Beard filed her lawsuit in Arkansas before the defendants filed suit in Louisiana while settlement negotiations were ongoing. *Id.* The defendant sent Beard's counsel a letter stating that if Beard would not comply with the demand, he would appreciate the courtesy of notifying him so that he could "institute the necessary legal proceedings." *Id.* at *2. Beard's counsel then called defendant's counsel stating he would contact counsel by September 14, 2009, to resolve the matter. *Id.* Beard instead filed declaratory judgment action in Arkansas five days before that deadline. *Id.*

The Court exercises its discretion to decline to apply the first-to-file rule based on the notion that the rule is "not a rigid or inflexible rule to be mechanically applied." *Pacesetter,* 678 F.2d at 95. First, the cases sufficiently differ. This case includes additional plaintiffs, defendants, and claims. The Court has not determined yet whether it can exercise jurisdiction over the Dahl/Goode Defendants. These defendants may be important additions, however, beyond the

Oregon Case. Further, the Oregon Case fails to include Plaintiffs Hinebauch and OCC. These Plaintiffs seem to assert important interests to be addressed through this litigation. Finally, the Oregon Case would not completely settle all disputes. Although DKB/Flowers moves to dismiss a number of the claims of the First Amended Complaint, on which the Court has not yet ruled, a number of claims are not contested at this time that extend beyond the scope of the claims of the Oregon Case.

Further, it appears that the Defendants filed an anticipatory suit in the District of Oregon as an apparent attempt to forum shop. Similar to the plaintiffs in *Beard* and *Mission*, a dispute exists as to whether Defendants misled the Plaintiffs into believing settlement efforts would continue. The Court declines to rely exclusively on DKB/Flowers's counsel's assertion that she did not promise the Plaintiffs that she would *not* file suit. It stands undisputed, however, that the parties, all represented by counsel, contemplated litigation to resolve the disputes over the contracts.

According to the affidavits of MMI president and CEO Thayer and counsel Blewett, Daley told them that she would check again with her clients and would get back to MMI about whether the matter could be resolved. (Affidavit of Alexander Blewett III, Doc. 26 at 3; Affidavit of Greg Thayer, Doc. 27 at 5-6.) Also, according to the affidavits of Thayer and Blewett, Daley knew full well that

13

MMI intended to file suit if a settlement could not be reached. (Affidavit of Alexander Blewett III, Doc. 26 at 2; Affidavit of Greg Thayer, Doc. 27 at 5.) The "red flags" noted by the Eighth Circuit appear here where DKB/Flowers filed the first suit after MMI had given notice of its intention to sue, and the first action filed in Oregon seeks, among other relief, a declaratory judgment regarding the interpretation of the contracts between the parties. *Boatmen's*, 57 F.3d at 641.

      This case should be tried here. DKB appears to have initiated numerous significant, purposeful contacts with the District of Montana leading up to the execution of the contracts and after. Representatives of DKB and Flowers traveled to Montana numerous times to negotiate the contracts and to meet with Montana farmers. The parties drafted the contracts in Montana (although DKB argues it negotiated the agreements from its Oregon headquarters). MMI was to perform under the contract exclusively in Montana where the wheat was grown, procured, and milled. MMI was to deliver the final products under the contracts to a common carrier in Montana for shipment to Oregon. DKB's efforts in Montana and the significant efforts undertaken within Montana to perform under the contract overshadow the rare instances of MMI having conducted business in Oregon, or the DKB's argument that it conducted its business with MMI through Oregon.

B. Stay

The Court further declines to stay this action pending resolution of the Oregon Case. Defendants have failed to make out "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. The *McCullough* factors do not outweigh the Court's determination that this case would be better resolved in the District of Montana. *See McCullogh,* 2010 WL 441533, at *4-5.

## IV. ORDER

Accordingly, IT IS ORDERED that Defendants' motion to transfer venue, or, in the alternative, to stay the case (Docs. 13, 15) is DENIED.

DATED this 9th day of June, 2017.

Brian Morris
United States District Court Judge