# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

|  |  |
|---|---|
| MONTANA MERCHANDISING, INC., d/b/a MONTANA MILLING, INC., HINEBAUCH GRAIN, INC., and OCC-O'CONNOR CROPS AND CATTLE, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVE'S KILLER BREAD, INC., GLENN DAHL, Individually and as Trustee of Glenn Dahl Family Trust, DAVID J. DAHL, Individually and as Trustee of the David Dahl Family Trust, SHOBI L. DAHL, Individually and as Trustee of the Shobi L. Dahl Family Trust, FLOWERS FOODS, INC., and GOODE PARTNERS, LLC,<br><br>Defendants. | CV 17-26-GF-BMM<br><br><br><br>ORDER ON GOODE/DAHL DEFENDANTS' MOTION TO DISMISS |

Defendants Glenn Dahl, individually and as Trustee of the Glenn Dahl Family Trust, David J. Dahl, individually and as Trustee of the David Dahl Family Trust, Shobi L. Dahl, individually and as Trustee of the Shobi Dahl Family Trust, and Goode Partners, LLC (collectively, "Dahl/Goode Defendants"), move this Court to dismiss the First Amended Complaint (Doc. 18) for lack of personal jurisdiction over them. (Doc. 44 at 2.) In the alternative, the Dahl/Goode

Defendants move to strike "immaterial, impertinent and scandalous matter" from the First Amended Complaint. *Id.*

## I.    <u>BACKGROUND</u>

Plaintiffs Montana Merchandising, Inc. ("MMI"), Hinebauch Grain, Inc. ("Hinebauch"), and OCC-O'Connor Crops and Cattle, LLC ("OCC") allege in the First Amended Complaint that Defendants Dave's Killer Bread, Inc. ("DKB"), an Oregon corporation that produces organic bread products at its main bakery facility in Milwaukie, Oregon (*see* Doc. 14 at 9), and Flowers Foods, Inc. ("Flowers"), a publicly traded Georgia corporation that acquired DKB in 2015 (*see* Doc. 14-2 at 3), failed to perform under two 2014 contracts. (Doc. 18 at 6.) Plaintiffs further contend that DKB/Flowers reneged on oral promises to purchase all of the organic wheat that MMI could procure from Montana organic wheat farmers. *Id.*

David J. Dahl is an individual and a Trustee of the David Dahl Family Trust. (Doc. 18 at 2.) In 2004, David rejoined his family bread business after having served 15 years in prison. *Id.* He attempted to remake his life and the life of the family business, which became known as DKB. *Id.* Under David's guidance, DKB's sales of organic bread jumped from $3,000,000 to $53,000,000, with most of the growth limited to Oregon and Washington. *Id.* at 2-3.

Glenn Dahl is an individual and a Trustee of Glenn Dahl Family Trust. Shobi L. Dahl is an individual and Trustee of the Shobi L. Dahl Family Trust. *Id.*

Plaintiffs assert that David, Glenn, and Shobi ("the Dahls") owned the controlling shares of stock of DKB during the part of the time period alleged in the Complaint. Plaintiffs allege that the Dahls worked together in the expansion of DKB's growth and promises to purchase the organic wheat in Montana. *Id.*

In 2013, David, the President of DKB, decided to expand DKB's presence in a number of states, including Montana. *Id.* at 3. DKB entered into a partnership with Goode Partners, LLC ("Goode"), a New York based private equity firm, to help guide DKB's growth into the new markets, including Montana. *Id.* Plaintiffs allege that David traveled to Montana in early 2013, on behalf of DKB, to meet with MMI and tour MMI's plant. Plaintiffs contend that David commenced substantive discussions with MMI's representatives that led DKB to promise to purchase all the organic wheat from MMI that Montana growers of organic wheat could produce. *Id.*

Plaintiffs seek to pierce DKB's corporate veil. *Id.* Plaintiffs allege that DKB served as "a mere agent and/or alter ego," acting on behalf of the Dahls. *Id.* Plaintiffs claim that once the Dahls decided to expand DKB with a vast amount of Montana organic wheat, "they advanced their own personal interests above the interests of the corporation." *Id.* Plaintiffs further assert that the Dahls "chose to use the corporate cloak to justify their wrongs and to perpetrate fraud." *Id.*

Plaintiffs contend the Dahls "exercised complete control over the conduct and activities of DKB in all particulars and, specifically, in the venture regarding the Montana organic wheat." *Id.* Plaintiffs assert that the Dahls entered into a partnership with Goode, "for their own personal interest and not the interest of the corporation, and embarked on a course of conduct to perpetuate fraud on MMI and the Montana organic wheat farmers." *Id.*

Plaintiffs allege that the Dahls, as the individual controlling shareholders of DKB, acted to defraud its creditor, MMI. *Id.* at 4. Plaintiffs claim that the Dahls "failed and/or refused to tell Flowers Foods, Inc., about their promises to purchase the Montana organic wheat, which purchase was one of the important reasons for the expansion of the worth of DKB." *Id.*

Plaintiffs assert that the Dahls and DKB sent agents to Montana to meet with MMI and Montana wheat farmers on multiple occasions. Plaintiffs contend that these visits to Montana resulted in written and oral agreements between the parties for the production of organic wheat and milling services. *Id.* at 4-6.

## II.  LEGAL STANDARDS

### A. Motion to Dismiss

Federal courts generally look to state law to determine the bounds of their jurisdiction over parties. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal quotation and citation omitted). Montana follows a two-step test for

4

determining whether a Montana court may exercise personal jurisdiction over a nonresident defendant. *Milky Whey, Inc. v. Dairy Partners*, 342 P.3d 13, 17 (Mont. 2015). First, a party may be "found within the state of Montana" and subject to general jurisdiction. *Id.* Second, specific jurisdiction may exist if the claim for relief arises from any of the acts listed in Montana Rules of Civil Procedure Rule 4(b)(1)(A-G). *Id.*

When opposing a defendant's motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where the factual basis for personal jurisdiction is challenged, the plaintiff cannot "simply rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

### B. Alternative Motion to Strike Immaterial, Impertinent, and Scandalous Matter from the Amended Complaint

Rule 12(f) provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion to strike serves "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those

issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

## III.  DISCUSSION

### A. Motion to Dismiss

Plaintiffs concede that this Court lacks general jurisdiction over the Dahl/Goode Defendants. (Doc. 58 at 9.) Plaintiffs argue instead that this Court possesses "long-arm jurisdiction" based on the fact that the Dahl/Goode Defendants transacted business and committed torts in Montana through agents. M.R.Civ.P. 4(b)(1)(A) and (B).

This Court clearly possesses personal jurisdiction over the alleged agents, Tucker and Milio, in this case, who undisputedly have traveled to Montana numerous times to conduct business with MMI. This case presents unusual circumstances in that the Dahl/Goode Defendants have disputed any agency relationship between themselves and Tucker and Milio relevant to Plaintiffs' claims.

The Dahl/Goode Defendants submitted declarations by Glenn Dahl (Doc. 45-1), David J. Dahl (Doc. 45-2), Shobi L. Dahl (Doc. 45-3), David Oddi, Goode Managing Member (Doc. 45-4), John Tucker (Doc. 45-5), and Ronald Milio (Doc. 45-6), in which they dispute Plaintiffs allegations that Tucker and Milio served as agents of the Dahl/Goode Defendants. The declarations further dispute that the

Dahl/Goode Defendants sent Tucker and Milio to Montana to make promises to the Plaintiffs in the period from October 2013 through June 2015.

The Dahl/Goode Defendants contend that Plaintiffs cannot "rest" on the bare allegations of the Amended Complaint. *Amba Mktg.*, 551 F.2d at 787. They must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Id.* The Court notes, however, that it seems infeasible for MMI to refute the declarations before having engaged in discovery. "The question whether an agency relationship . . . existed is material to the personal jurisdiction issue." *Chan v. Society Expeditions, Inc.* 39 F.3d 1398, 1406 (9th Cir. 1994).

Further discovery by the parties proves necessary to help the Court to understand whether Tucker and Milio acted as agents of the Dahl/Goode Defendants. If discovery reveals that Plaintiffs' allegations related to the Dahl/Goode Defendants are plausible, then this Court may exercise personal jurisdiction over the Dahl/Goode Defendants. If not, then the Dahl/Goode Defendants may renew its motion to dismiss or seek summary judgment.

The Court again raises the question of whether the Dahl Defendants and Goode may have divergent interests in this case that would benefit from having separate counsel.

## B. Alternative Motion to Strike Immaterial, Impertinent, and Scandalous Matter from the Amended Complaint

The Dahl/Goode Defendants take issue with "detailed scurrilous attacks on David Dahl" contained in the Amended Complaint. (Doc. 45 at 23.) The Dahl/Goode Defendants specifically take issue with the inclusion of the allegations related to David Dahl's alleged mental health issues, crime, and incarceration, both before and during his time with DKB.

Plaintiffs argue that they took the allegations from court records in Oregon and bear directly on David's credibility. (Doc 58 at 15.) Plaintiffs further contend that the record of David's issues in Oregon in 2013 overlaps with the timing of events in this case. The Court agrees that these issues may have important bearing in these proceedings. The Court further notes that DKB's marketing efforts rely heavily on David's story, including his past incarceration.

## IV.   ORDER

Accordingly, IT IS ORDERED that Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 44) is DENIED. Defendants' motion in the alternative to strike immaterial, impertinent, and scandalous matter from the Amended Complaint is DENIED.

DATED this 21st day of June, 2017.

Brian Morris
United States District Court Judge