# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| MONTANA MERCHANDISING, INC., d/b/a MONTANA MILLING, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DAVE'S KILLER BREAD, INC., et al.,<br><br>Defendants. | CV-17-26-GF-BMM<br><br>**ORDER** |

## I. Background

Plaintiffs Montana Merchandising Inc., Hinebauch Grain Inc., and OCC-O'Conner Crops and Cattle LLC (hereinafter collectively "MMI") filed a Motion to take Appropriate Disciplinary Action Against Annamarie A. Daley and Ian McIntosh. (Doc. 42). MMI argues that Ms. Daley, an attorney for Defendants Dave's Killer Bread, Inc. and Flowers Foods, Inc. (hereinafter collectively "DKB"), disclosed confidential settlement discussions in violation on Montana Code Annotated § 26-1-813 and that Ms. Daley and Mr. McIntosh violated several provisions of the Montana Rules of Professional Conduct ("MRPC") and the American Bar Association Model Rules of Professional Conduct ("ABA Model

Rules"). (*Id.*) The parties fully briefed the issue, and the Court conducted a hearing on the motions on June 8, 2017. (Doc. 84). The motion is ripe for decision.

## II. Facts

DKB filed an action against MMI in Oregon before this case was filed. (Doc. 63 at 7). MMI moved to dismiss the case, transfer venue to Montana, or for a stay. (*Id.*) In its motion, MMI argued that DKB was guilty of forum shopping and that settlement discussions occurring in Montana regarding identical claims warranted a change of venue to Montana. (*Id.*) DKB responded by arguing the settlement discussions were more limited than MMI had led the Oregon Court to believe. (*Id.*) Ms. Daley filed a Declaration in support of this argument. (Doc. 43-1). Ms. Daley's Declaration is a central subject of the motion before the Court.

## III. Standards

Local Rule 83.2(a) sets the standard for professional conduct in this Court and provides the following:

> For a willful violation of any professional rules or standards in connection with any pending matter, an attorney is subject to appropriate disciplinary action and to referral of the matter to the appropriate authority for disciplinary proceedings.

L.R 83.2(a).

Mont. Code Ann. § 26-1-813 provides that all mediation-related communications between the parties, communications between the parties and the

mediator, and evidence presented to the mediator are confidential. MRPC Rules 8.4(c) and (d) provide that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation" or conduct that is "prejudicial to the administration of justice." ABA Model Rule 1.6 provides that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of . . . information relating to the representation of a client." ABA Model Rule 3.1 provides that an attorney must only make "meritorious claims and contentions." ABA Model Rule 3.3 provides that an attorney must disclose "legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by the opposing party." ABA Model Rule 3.4 provides that a lawyer must not "unlawfully obstruct another party's access to evidence" or "conceal a document or other material having evidentiary value." ABA Model Rule 4.1 provides that a lawyer shall not knowingly make a false statement of material fact or law to a third person. ABA Model Rule 8.3 provides that a lawyer must "maintain the integrity of the profession," and must inform the appropriate professional authority if a lawyer knows that another lawyer has violated an ABA Model Rule.

### IV. Analysis

**A.     Mont. Code Ann. § 26-1-813**

MMI contends that Ms. Daley disclosed "absolutely confidential" information regarding the parties' unsuccessful January mediation in violation of Mont. Code Ann. § 26-1-813. (Doc. 42 at 2). MMI argues that the matters discussed in mediation are "absolutely confidential" and "can, under no circumstances, be disclosed" and that "Section 26-1-813 mandates that every mediation is private and confidential and that no information whatsoever can be divulged concerning what transpired during the mediation." (Doc. 42 at 2).

DKB argues that Ms. Daley made her Declaration to correct MMI's own disclosure of what occurred during the mediation, which it contends was misleading to the Oregon Court. (Doc. 63 at 2). Ms. Daley's Declaration states in pertinent part:

> 3. During the mediation that occurred between the parties in January 2017, the parties spent most of the time with the mediator discussing whether [MMI] would provide copies of the producer contracts. [DKB] left the mediation still without any producer contracts except the one redacted page.
>
> 4. The purpose of the January 2017 mediation was solely to discuss the parties' disputes regarding the 2015 and 2016 harvest years.

(Doc. 43-1 at ¶¶ 3-4).

DKB contends that MMI urged the Oregon Court that the unsuccessful mediation generally encompassed all of MMI's claims. DKB cites to MMI's Motion to Dismiss, Transfer Venue, or, in the Alternative, to Stay, which MMI filed

in the Oregon Court and in which it states "[T]he parties made a good faith effort to resolve their dispute, **and discussed each claim, defense and/or issue** raised in this dispositive motion, but were unable to come to a resolution." (Doc. 63-1 at 5) (emphasis added).

MMI further stated the following in this motion:

> Throughout 2016, MMI asserted that Flowers . . . and Defendant were in breach of the January 5 and January 27 Agreements. MMI attempted to resolve its dispute with Defendant and Flowers to no avail at a meeting in November 2015 and May 2016 in Great Falls, Montana as well as one meeting with Defendant in Portland. [citation omitted]. **Those efforts culminated in a mediation** held in Great Falls, Montana on January 24, 2017 with a follow up meeting between counsel for the parties and MMI representatives on February 10, 2017, again in Great Falls, Montana.

(*Id.* at 9) (emphasis added). MMI also stated that "Here, [DKB] filed this case immediately after they participated in an unsuccessful mediation of these claims in Montana." (*Id.* at 23; Doc. 63 at 7).

The Court determines that Ms. Daley's Declaration was about the scope of the mediation in response to MMI's representations about the scope of the mediation. The Court further determines that Ms. Daley's Declaration did not divulge any offers or demands that may have been made at the mediation, any positions that either party took at the mediation, or any statement any person made at the mediation concerning any party's claim(s) or otherwise. Therefore, Ms. Daley's Declaration did not violate Mont. Code Ann. § 26-1-813.

**B.     MRPC Rule 8.4(c) and (d)**

As a basis for disciplinary action, MMI argues that Ms. Daley's Declaration violates Montana Rule of Professional Conduct 8.4(c) and (d), in that it is both "prejudicial to the administration of justice" and reflects "dishonesty and misrepresentation." (Doc. 43 at 3). The Court determines that Ms. Daley's Declaration, because it was limited to describing her understanding of the scope of the mediation compared to MMI's understanding of the scope of the mediation as set forth in its motion to the Oregon Court, does not constitute a violation of Rule 8.4(c) or (d).

**C.     ABA Model Rules**

"As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." ABA Model Rules, pmbl. ¶ 2.[1] While the Preamble states that failing to comply with the Rules is a basis for disciplinary action, any disciplinary assessment must consider the facts and circumstances. *Id.* ¶ 19. Even if a party does violate a Rule, said violation "does not necessarily warrant any other nondisciplinary remedy[.]" *Id.* ¶ 20. As discussed below, the Court determines that

---

[1] The corresponding provision in the Montana Rules of Professional Conduct is identical, except that the Montana Preamble omits the word "zealously." Montana Rules of Professional Conduct, pmbl. ¶ 3.

Ms. Daley and Mr. McIntosh's actions do not warrant disciplinary action under the ABA Model Rules.

    **1.**    **Mode Rule 1.6(c)**

MMI asserts that Ms. Daley's Declaration is a "direct contravention to [ABA Model Rule] 1.6(c)," which states that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of . . . information relating to the representation of a client." (Doc. 43 at 3). However, Model Rule 1.6 encompasses the relationship between an attorney and her client. Ms. Daley filed her Declaration in order to correct what she believed to be MMI's potentially misleading interpretation as to the scope of the mediation and was therefore not an inadvertent or unauthorized disclosure of information relating to the representation of her client.

As an additional matter, MMI argues that in disclosing information relating to the mediation, Ms. Daley has "expressly waived any attorney client privilege that would have attached to such conversation." (*Id.*) Specifically, MMI refers to alleged conversations Ms. Daley "obviously" had with her client wherein she set out her "diabolical scheme" to trick MMI into delaying its filing. (*Id.* at 6). As explained above, Ms. Daley did not disclose information relating to her

communications with her client. Accordingly, there is no waiver of attorney-client privilege with respect to the communications Ms. Daley had with her clients.

### 2. Model Rule 3.1

MMI asserts that Ms. Daley "lulled [MMI] into not filing suit under her ruse of a supposed settlement" so she could file a breach of contract claim against [MMI] in Oregon, despite "never once so much as mention[ing] a conceivable breach of contract claim." (Doc. 43 at 4).

Ms. Daley did not violate Model Rule 3.1 because her filing was not frivolous. While DKB's claim was eventually dismissed in Oregon, were it not for the exception to the first-to-file rule, both the federal court in Oregon and this Court may have concluded that the claim was properly filed. *See Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (the first-to-file rule "should not be disregarded lightly"). The Oregon Court also held that though DKB's claims for declaratory judgment should be dismissed, it did so without prejudice and stated that the claims could be brought as counterclaims in the Montana action. (Doc. 108-2 at 6). Therefore, DKB's claims are not frivolous and therefore do not violate ABA Model Rule 3.1.

### 3. Model Rule 3.3

MMI claims that Ms. Daley and Mr. McIntosh violated their ethical duty of candor to the tribunal by "intentionally hid[ing]" relevant case law from the Ninth Circuit as well as from the Second, Third, Fifth, and Eighth Circuits. (Doc. 43 at 4). MMI also seeks disciplinary action under Model Rule 3.3 claiming Ms. Daley and Mr. McIntosh "never mentioned in their original motion to the Court, their bad faith conduct, their race to the Oregon courthouse, or the fact that Daley led MMI and its counsel to believe a response to a settlement proposal would be forthcoming." (Doc. 66 at 8).

MMI does not specify the controlling cases Ms. Daley and Mr. McIntosh allegedly hid from the District Court. In its Order denying Defendants' Motion to Transfer, the District Court relied heavily on *Pacesetter Sys., Inc. v. Meditronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) and *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622 (9th Cir. 1991). (Doc. 81). Both were cited and distinguished by DKB in their motion. (*See* Doc. 14 at 12-13, 21). Additionally, cases from the Second, Third, Fifth, and Eighth Circuits are not from the controlling jurisdiction and therefore any failure to disclose them would not violate Model Rule 3.3.[2]

---

[2]MMI mistakenly cited *Boatmen's First National Bank of Kansas City v. Kansas Pub. Employees Ret. System*, 57 F.3d 638 (8th Cir. 1995), as a Ninth Circuit case in its Brief in Opposition of Defendants DKB and Flowers' Motion to Dismiss, Transfer Venue or in the Alternative, Stay. (Doc. 25 at 3, 6).

While MMI strenuously asserts that DKB's lawsuit in Oregon was filed in bad faith, DKB is not required to agree that they acted in bad faith. More importantly, the District Court did not find that DKB filed in bad faith, but rejected its claim as an attempt to forum shop. The District Court's order states that "[T]he Ninth Circuit specifically has recognized three exceptions to the first-to-file rule: bad faith, anticipatory suit, and forum shopping. [Citation omitted]. . . . [I]t appears that the [DKB] filed an anticipatory suit in the District of Oregon as an apparent attempt to forum shop." (Doc. 81 at 8, 13). Therefore, this Court determines that DKB's filing in Oregon was not in bad faith and that Ms. Daley and Mr. McIntosh were not was not obligated to inform the District Court that their filing was in bad faith as MMI alleges they were.

### 4. Model Rule 3.4

MMI claims that Ms. Daley specifically violated Model Rule 3.4 by acting unfairly in "hid[ing] from [MMI's] counsel the fact that she was intending to flee to Oregon to file the suit." (Doc. 43 at 5).

Model Rule 3.4 applies to documents and physical evidence, not litigation strategy. MMI does not allege Ms. Daley unlawfully obstructed their access to "evidence" or altered or concealed "a document or other material having potential

evidentiary value." The Court therefore determines that Ms. Daley did not violate Model Rule 3.4 by filing the action in Oregon.

## 5. Model Rule 4.1

MMI also contends that Ms. Daley violated Model Rule 4.1. MMI equates Ms. Daley "never claim[ing] that MMI had breached any contract" with making "false statements to MMI and its counsel." (Doc. 66 at 9). At a hearing on the issue, counsel for MMI stated that he believed Ms. Daley was required to inform him that she would file suit before she did so:

> The Court: Well what's [Ms. Daley's] obligation? Is her obligation before she leaves to say, well, Mr. Blewett, you know, my client is going to think about your offer, but I'm going to file a lawsuit tomorrow? So if you want to file before me, you should do it today, because I'm going to do it tomorrow? Is that what you think she should have done?
>
> Mr. Blewett: Absolutely that's what she should have done.

Hr'g Tr. 12:4–12 (June 8, 2017).

As a part of the adversarial system, however, Ms. Daley was not required to divulge litigation strategy to opposing counsel. The official comment to Model Rule 4.1 provides the following:

> [Rule 4.1] refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. . . . [A] party's intentions as to an acceptable settlement of a claim [is] ordinarily in this category.

ABA Model Rule 4.1, cmt. 2.

Ms. Daley states in her Declaration that she "never deceived" MMI, and that she did not file the claim in Oregon "surreptitiously." (Doc. 40-1 at 3). Ms. Daley also stated that she never stated to MMI's counsel that her clients would wait to file a lawsuit. (*Id.*) While Ms. Daley did not disclose to MMI or its counsel that DKB intended to file suit, neither did she make a "false statement of material fact" in violation of Model Rule 4.1.

### 6. Model Rule 8.3

Finally, MMI claims that Ms. Daley and Mr. McIntosh violated ABA Model Rule 8.3 by failing to report each other's "egregious conduct" and their "diabolical scheme" to file suit in Oregon to this Court. (Doc. 43 at 6).

ABA Model Rule 8.3 does not require an attorney to report every alleged violation of the ABA Model Rules. "[Rule 8.3] limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgment is, therefore, required in complying with the provisions of this Rule." ABA Model Rule 8.3, cmt. 3. Alongside an attorney's judgment in reporting an ethical violation, "Rule 8.3 requires actual knowledge of, or believing clearly that there has been a violation, which implies more than a

suspicion of misconduct." S.C. Bar Ethics Advisory Committee, Ethics Advisory Opinion 05-04 (2005).

MMI contends that Mr. McIntosh had knowledge of Ms. Daley's egregious conduct after their counsel sent an email to Mr. McIntosh's partner. (Doc. 26-1). According to MMI, "McIntosh was specifically told of [Ms. Daley's] conduct, which is more than sufficient to prove his knowledge. The email his law firm received advising of Daley's misconduct could not be more clear." (Doc. 66 at 10). MMI's counsel's email provides the following:

> If [Ms. Daley] actually intends to appear in Judge Morris' Court, I think it is imperative for Judge Morris to know the conduct she has already exhibited. Therefore, when you do file your motion, please note that we object and we will proceed with advising Judge Morris precisely what Annamarie Daley did in her filing of the litigation in Oregon.

(*Id.*)

Although MMI's counsel holds the strong belief that Ms. Daley had acted illegally and unethically, Mr. McIntosh was not obliged to agree. Furthermore, as discussed above, the Court has determined that Ms. Daley's conduct, no matter how repugnant to MMI's counsel, did not constitute illegal or unethical conduct. Therefore, the Court concludes that Mr. McIntosh and Ms. Daley did not violate Model Rule 8.3.

**D.    Attorney's Fees and Costs**.

In their Reply Brief, MMI requests that the Court order Ms. Daley and Mr. McIntosh to personally satisfy all of their expenses and attorney's fees under 28 U.S.C. § 1927 ("[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"). (Doc. 66 at 10). As explained above, Ms. Daley and Mr. McIntosh did not act "unreasonably and vexatiously." Therefore, MMI is not entitled to recover their expenses and attorney's fees pursuant to 28 U.S.C. § 1927.

## V. Conclusion

For the reasons stated above, MMI's Motion to Take Disciplinary Action Against Annamarie A. Daley and Ian McIntosh is DENIED. MMI's request that Ms. Daley and Mr. McIntosh pay its attorney's fees and expenses is also DENIED.

Dated the 25th day of September, 2017.

_____
John Johnston
United States Magistrate Judge